UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION


OLU FEMIDARAMOLA                                                    PLAINTIFF

v.                                          CIVIL ACTION NO. 3:05CV643JS

LEXTRON CORPORATION                                                DEFENDANT

<u>MEMORANDUM OPINION AND ORDER</u>

     This cause is before the Court on motion of Defendant Lextron Corporation (Lextron) for summary judgment pursuant to Federal Rule of Civil Procedure 56. Plaintiff Olu Femidaramola has responded in opposition. Having considered the memoranda, submissions, oral argument, and follow-up submissions from the parties, the Court concludes that Defendant's motion should be granted in part and denied in part as set forth herein.

**I.**    **<u>PROCEDURAL HISTORY/FACTS</u>:**

     On October 25, 2005, Femidaramola, a naturalized citizen born in Nigeria, filed this action against his former employer, Lextron, alleging that Lextron discharged him based on his national origin and in retaliation for complaining about what he perceived to be harassment. 42 U.S.C. §§ 1981 and 2000e (2000). Specifically, Count I of Plaintiff's Complaint alleges disparate impact. In Count II, Femidaramola claims disparate treatment in that he was allegedly treated differently from, and more harshly than, "other similarly situated African-Americans because of his status as a native born African." Though not contained in either of the formal counts of his Complaint, Plaintiff also avers that Defendant terminated him in retaliation "for exercising his rights to work in a workplace free of discrimination based on his national origin . . . ." There are no other claims apparent from

1

the Complaint.  Defendant submits that it discharged Femidaramola due to his inability to get along with others and has filed a motion seeking summary judgment as to all of Plaintiff's claims. Defendant also moves the Court to dismiss Plaintiff's claim due to after acquired evidence regarding Plaintiff's prior employment.

Femidaramola began work at the Lextron plant in Canton, Mississippi, on March 22, 2004, as a production technician on the night shift.[1]  In July 2004, he was promoted to team leader and began working on the day shift.  In that position, Plaintiff led up to five technicians.  According to Plaintiff, he began having problems with his technicians shortly after his promotion.  He claims that those technicians, all of whom are African-American, insulted him on a regular basis and that he complained about their conduct to his supervisors.  Although many of the insults had nothing to do with his national origin, Plaintiff does allege derogatory statements such as "stupid African."  None of these comments came from supervisors, but Plaintiff asserts that Lextron did not discipline his co-workers for their conduct and that Defendant unjustly fired him on March 18, 2005.   Shortly thereafter, Plaintiff filed a charge of national origin discrimination with the Equal Employment Opportunity Commission (EEOC).  On August 26, 2005, the EEOC issued Plaintiff a right-to-sue letter.  Plaintiff then filed this lawsuit.

Defendant;s motion for summary judgment raises four primary questions for the Court: 1) can Plaintiff establish a prima facie case of disparate impact; 2) can Plaintiff establish a prima facie case of disparate treatment by showing that Defendant treated him differently from a similarly situated non-"native born African" employee under nearly identical circumstances; 3) did Plaintiff

---

[1]Lextron manufactures the front end module and the cockpit assembly for Calsonic, which then supplies these products to Nissan for use in automobiles.

properly exhaust his administrative remedies with respect to his retaliation claim; and 4) can Plaintiff establish a prima facie case of retaliation under section 1981.

## II.    ANALYSIS:

### A.    Disparate Impact Claim:

Count I of Plaintiff's Complaint alleges a claim of disparate impact.  Defendant points out, and the Court agrees, that Plaintiff's Complaint failed to identify a facially neutral policy which has a disproportionately adverse effect on a protected class.  *See Pacheco v. Mineta*, 448 F.3d 783, 791 (5th Cir. 2006).  What is more, Plaintiff does not address this claim in his response.  Accordingly, the Court concludes that his disparate impact claim is due to be dismissed.

### B.    Disparate Treatment Claim:

To prove a prima facie case of employment discrimination Plaintiff "must establish that he (1) is a member of a protected class; (2) was qualified for the position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class, or, in the case of disparate treatment, show that other similarly situated employees were treated more favorably."[2] *Bryan v. McKinsey & Co., Inc.*, 375 F.3d 358, 360 (5th Cir. 2004) (citing *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512 (5th Cir. 2001)).  It is undisputed that Plaintiff satisfies the first three criteria, so the Court's analysis turns on the fourth criterion.[3]

---

[2]  Plaintiff's claim of disparate treatment under section 1981 is subject to the same analysis accorded Title VII disparate treatment cases.  *Hill v. K-Mart Corp.*,  699 F. 2d 776, 779 (5th Cir. 1983).

[3] Defendant argues that Plaintiff cannot maintain a claim of disparate treatment by comparing himself, an African-American born in Nigeria, to his African-American co-workers born in the United States, in that all of the individuals involved are black.  In response, Plaintiff concedes that the Fifth Circuit has not specifically decided whether a native born African-American can satisfy the fourth prong of the prima facie case by showing that an African-American born in the United States was treated more favorably.  *See Okoye*, 245 F. 3d at 513 ("Okoye argues that she can meet [the fourth] prong because she is a black, Nigerian woman, and she was replaced by a black, Jamaican woman.  Conversely, UTHHSC alleges that Okoye has failed to meet this prong because both Okoye and her replacement are black.  Since we decide this case on the issue of pretext, we assume without deciding that Okoye

In order to succeed on his claim of disparate treatment, Plaintiff must show that Defendant Lextron "gave preferential treatment to another employee under nearly identical circumstances; that is, that the misconduct for which the plaintiff was discharged was nearly identical to that engaged in by other employees." *Kelley v. Lockheed Martin Corp.*, No. 02-60135, 2002 WL 31319405, *1 (5th Cir. Oct. 2, 2002) (citing *Okoye*, 245 F.3d at 514). To do so, Plaintiff must show both that he and the employee were similarly situated in all relevant respects and that his employer gave preferential treatment to the other employee under "nearly identical" circumstances. *Bryant v. Compass Group USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005).

In his deposition, Plaintiff testified that when he assumed the position of team leader, technicians working under his leadership engaged in frequent "name-calling." Specifically, he claims that various African-American technicians referred to him as "nigger," "boy," "bald headed old man," and "dumb stupid African."[4] Plaintiff further testified that his technicians did not treat him with respect, frequently refused to follow his instructions, and generally harassed him. Plaintiff maintains that he complained about their conduct to his supervisors and others, but Lextron did nothing. In short, Plaintiff's disparate treatment claim is rooted in his belief that the African-American technicians working under him were permitted to harass him without consequence, while he was fired based on his alleged inability to get along with others. He takes the position that the disparity in treatment is attributable to his national origin.

---

has met this prong of the prima facie case."). Because the Court decides this case on other grounds, it is not necessary to further review or decide this point of law.

[4]Plaintiff's memorandum of law gives great weight to the stray remarks of his subordinates. While these remarks were offensive, many do not relate to Plaintiff's national origin. Moreover, the remarks do not establish a disparate treatment claim absent proof that a similarly situated co-worker was treated more favorably under nearly identical circumstances.

Defendant first insists that the employees Plaintiff points to are not proper comparators.  The Court agrees.  None of the employees Plaintiff claims were treated more favorably than himself were team leaders or supervisors.  They were technicians, most of whom worked under Plaintiff's supervision.  It is undisputed that Plaintiff's move from technician to team leader was a promotion for which he received a pay increase.  Plaintiff held a position of authority, and the technicians were subordinate to him.  Hence, Femidaramola and the technicians were not similarly situated.  *See Mitchell v. City of Wichita*, 140 F. App'x. 767, 780, 2005 WL 1635381, *8 (10th Cir. 2005) (noting that if employee is not subject to same responsibilities, expectations, and discipline, then "the comparison to the disciplinary action taken against them does not support the inference that race is the reason for the disparity in treatment."); *Davis v. BL Dev. Corp.*, No. Civ. A. 2:03CV335PA, 2005 WL 1876845, *5 (N.D. Miss. Aug. 8, 2005) (finding plaintiff's subordinate was not similarly situated); *Oguezuonu v. Genesis Health Ventures, Inc.*, 415 F. Supp. 2d 577, 585 (D. Md. 2005) (noting that plaintiff's subordinates were not "similarly situated" employees); *Mack v. Strauss*, 134 F. Supp. 2d 103,114-15 (D.D.C. 2001) ("The five staff members in plaintiff's group are not similarly situated because they are plaintiff's subordinates, and by definition, they do not deal with the same supervisor and are not subject to the same standards as plaintiff."); *Rodriguez v. Motorola, Inc.*, No. 00 C 3133, 2001 WL 968651, *6 (N.D. Ill. Aug. 22, 2001) ("Supervisors and superiors are not similarly situated to subordinates.").

Second, Defendant has submitted record evidence that the conduct of the other employees was not comparable to Plaintiff's conduct.  For example, Raymond White, Plaintiff's immediate supervisor, testified as to a series of confrontations between Plaintiff, his subordinates and others in

the factory.  White testified that he counseled both Femidaramola and the other parties involved.[5]
Although White conceded that Lextron did not discharge the technicians involved in the altercations,
he explained that as a team leader, Femidaramola's job was to make sure the production line ran
effectively, and accordingly, he was expected to control his temper.

While it is true these technicians were involved in inappropriate verbal confrontations during
the workday, the common denominator in all of these episodes was Femidaramola.  From an
employer's standpoint, a technician who argues with his or her team leader and a team leader who
argues with at least six different technicians have not engaged in "nearly identical conduct."  *Bryant*,
413 F.3d at 478-79; *see also Jackson v. City of Clarksdale*, 84 F. App'x. 451, 2004 WL 34820, *1
(5th Cir. 2004) (quoting *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220-21 (5th Cir. 2001))
("As this court has explained, 'the conduct at issue is not nearly identical when the difference
between the plaintiff's conduct and that of those alleged to be similarly situated accounts for the
difference in treatment received from the employer.'").

The only true comparator apparent in the record was Floyd Rice.  Like Plaintiff, Rice (a non-
Nigerian) was a team leader.  The record reflects that Rice had confrontations with Plaintiff and with
Rice's own subordinates.  A Lextron memorandum dated March 14, 2005 states that both Rice and
Plaintiff were warned that future confrontations could lead to termination.  Like Plaintiff, Rice was
terminated for failing to get along with his subordinates.   Thus, Rice, who held similar
responsibilities and job duties, was likewise discharged for nearly identical conduct.

---

[5]Femidaramola, in his deposition, denies that White counseled him regarding the incidents, insisting instead
that he "counseled" White.  Notwithstanding, it is clear that some kind of meeting took place between White and
Plaintiff following the incidents.

The Court is of the opinion that Plaintiff has failed to show that he was treated differently than similarly situated employees who were not "native born African[s]" under nearly identical circumstances.  To the contrary, he was treated the same as a non-Nigerian employee under substantially similar circumstances.  *See Bryant*, 413 F.3d at 479 (finding failure to prove disparate treatment where similarly situated employee treated the same for nearly identical conduct); *Jenkins v. State of La., Through Dept. of Corrections,* 874 F.2d 992, 996 (5th Cir. 1989) (affirming finding of no disparate treatment where similarly situated employees outside protected class treated similarly).  Because Plaintiff has failed to meet his prima facie burden with respect to his disparate treatment claim, summary judgment as to this claim is in order.

### C.     **Retaliation Claim:**

To sustain a claim of retaliation, Plaintiff must show that he engaged in a protected activity, that he suffered an adverse employment action, and that a causal nexus exists between the protected activity and the employment action.  *Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2002).  However, with respect to his Title VII retaliation claim, Plaintiff must first exhaust his administrative remedies.  Here, Lextron asserts, and the Court agrees, that Plaintiff has failed to exhaust those remedies because he did not allege retaliation in his charge of discrimination with the EEOC.

The Court must review Plaintiff's EEOC charge to determine whether administrative remedies have been exhausted.  According to the Fifth Circuit Court of Appeals:

> The scope of the exhaustion requirement has been defined in light of two competing Title VII policies that it furthers.  On the one hand, because "the provisions of Title VII were not designed for the sophisticated," and because most complaints are initiated pro se, the scope of an EEOC complaint should be construed liberally. *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 463 (5th Cir. 1970).  On the other

7

hand, a primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in attempt to achieve non-judicial resolution of employment discrimination claims.   *Id.* at 466.   Indeed, "[a] less exacting rule would also circumvent the statutory scheme, since Title VII clearly contemplates that no issue will be the subject of a civil action until the EEOC has first had the opportunity to attempt to obtain voluntary compliance." [*Id.*] at 467.   With that balance in mind, this court interprets what is properly embraced in review of a Title-VII claim somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which "can reasonably be expected to grow out of the charge of discrimination." [*Id.*] at 466.   We engage in fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look slightly beyond its four corners, to its substance rather than its label.

*Pacheco*, 448 F.3d at 788 -89 (some citations omitted).

Although the Court will look slightly beyond the four corners of the charge, the review is not unlimited.   Moreover, a clear distinction exists between conduct creating retaliation claims and conduct creating discrimination claims such that filing an EEOC charge as to one will not exhaust administrative remedies as to both.   *See, e.g., Teffera v. N. Tex. Tollway Auth.*, 121 F. App'x. 18, 21 (5th Cir. 2004) (affirming dismissal of retaliation claim for failure to exhaust administrative remedies where plaintiff checked "retaliation" on pre-charge EEOC form but not on EEOC charge and referenced only discrimination based on national origin in charge); *see also Perez v. MCI World Com Commc'ns*, 154 F. Supp. 2d 932, 938 (N.D. Tex. 2001) (holding that where alleged retaliation took place prior to filing of plaintiff's EEOC charge, plaintiff failed to exhaust administrative remedies by neglecting to check "retaliation" box and failing to include any statements regarding retaliation).

There is an exception to this rule which Plaintiff cites in his memorandum of law.   Where the retaliation grows out of an administrative charge that is properly before the court, there is no need to file a second EEOC charge.   *Gupta v. East Tex. State Univ.*, 654 F.2d 411, 414 (5th Cir. 1981).

In *Gupta*, the plaintiff complained that his employer retaliated against him *after* he filed his EEOC charge. *Id.* As such, the Fifth Circuit Court of Appeals concluded that it was unnecessary for a plaintiff to file a second EEOC charge where the retaliation he experienced occurred as a result of the first. *Id.*; *see also Williams v. J.P. Morgan Chase & Co.,* No. Civ. A. 3:02CV2462, 2004 WL 1698289, *3 (N.D. Tex. July 28, 2004) (citing *Gupta*, 654 F. 2d 411) (noting that "a retaliation claim arising prior to the filing of an EEOC charge may only be included if it was a part of the original charge").

In this case, there is no dispute that the alleged protected activity (complaining of workplace harassment) and the adverse employment action (termination) both occurred before Plaintiff filed his EEOC charge of discrimination. *Gupta* is therefore inapplicable, and the Court must determine whether Femidaramola's EEOC charge properly embraced the retaliation claim. In other words, would a retaliation investigation reasonably grow out of Plaintiff's charge of discrimination? *Pacheco*, 448 F.3d at 788 -89.

In his EEOC charge of discrimination, Plaintiff states that he has been "called all sorts of names and no disciplinary action was taken against [the] individuals that called me names." He further claims that Lextron fired him for "walking behind another employee" because "they said they were scared of me." His charge of discrimination is consistent with his EEOC questionnaire in which he again alleges that he was discharged for walking behind a female employee because she was afraid of him. He states that he believes Defendant discriminated against him on account of national origin because "none of the Black employees were subjected to a hostile environment of name calling." In indicating the basis of his charge of discrimination, Femidaramola checked the box marked "National Origin." He did not mark "retaliation" in either document. Finally, Plaintiff's

9

counsel asked the Court to review emails from Plaintiff to the EEOC, but those documents do not mention retaliation either.

Even looking beyond Plaintiff's failure to check the "retaliation" box and his failure to allege facts consistent with a prima facie case of retaliation, there is nothing in his EEOC charge that would reasonably have been expected to trigger a retaliation investigation. *Id.* at 792 ("[T]he plaintiff's administrative charge will be read somewhat broadly, in a fact-specific inquiry into what EEOC investigations it can reasonably be expected to trigger.")  Simply put, the *substance* of Plaintiff's EEOC filings does not set forth any facts that would suggest an instance of retaliation.

Accordingly, the Court concludes that Plaintiff's Title VII retaliation claim should be dismissed for lack of subject matter jurisdiction because of his failure to exhaust administrative remedies.  *Id.* (affirming dismissal of the plaintiff's disparate impact claim where his EEOC charge alleged only disparate treatment); *Carter v. RMH Teleservices, Inc.*, No. Civ. A. SA04CA11330RF, 2005 WL 2086036, *4 (W.D. Tex. Aug. 10, 2005) (dismissing the plaintiff's racial discrimination claim for failure to exhaust administrative remedies where the plaintiff checked the "retaliation" box on his EEOC charge and failed to include any allegations relevant to race discrimination); *see also Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d 756, 760 (8th Cir. 2004) (affirming summary judgment as to retaliation claim on basis that plaintiff failed to exhaust administrative remedies, where plaintiff failed to mark "retaliation" on complaint form and failed to allege any facts connecting alleged complaint about racial slurs to termination).

Although Plaintiff's Title VII retaliation claim is barred, he asserts that exhaustion is not required for a retaliation claim under section 1981, which does not carry similar administrative

prerequisites.[6]  The Court agrees and must therefore consider whether or not Plaintiff has alleged a

prima facie case of retaliation.  *See Mayberry v. Mundy Contract Maint. Inc.*, No. 05-20794, 2006

WL 2505308, *2 (5th Cir. Aug. 30, 2006) (noting that a plaintiff's prima facie case of retaliation is

the same for claims under Title VII and section 1981).

The evidence shows that Plaintiff complained to his supervisors about what he considered

to be discrimination, that is, the technicians' derogatory remarks, and it is undisputed that he was

discharged from his employment.  In support of his claim, Plaintiff specifically points to various

complaints he lodged including a March 8, 2005 email to Bill Cagle, the plant manager at Calsonic.

It appears Plaintiff perceived Cagle to be a member of Lextron's management because he would

attend meetings at Lextron.  In his deposition, Femidaramola testified that after he sent the email he

was "chewed out by HR" (presumably human resources at Lextron).  He further testified that Jackie

Mack, a member of human resources told him "Olu, I'm sick and tired of you writing letters to Bill

Cagle."  Plaintiff submits that ten days later he was discharged.

Defendant attacks Plaintiff's claim by insisting that he cannot establish the causal nexus

between his complaints and his termination because "more than temporal proximity between the

protected conduct and termination is generally required to present a genuine fact issue on a

retaliation claim."  Defendant cites *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 832 (8th Cir.

2002) in support of this argument, but that case found a causal connection where the plaintiff was

discharged fourteen days after the protected conduct.  *Id*. at 833 (quoting *Clark County Sch. Dist.*

---

[6]Plaintiff's retaliation claim appears in the factual recitation of his Complaint and does not state whether it
was filed pursuant to Title VII or section 1981.  However, either statute would support such a claim.  While it would
have been more clear to place this claim in a count and identify the statutory basis for the claim, the Court finds that
under notice pleading the Complaint was sufficient in this regard.  Moreover, there appears to be no surprise or
prejudice to the Defendant as Defendant included the retaliation claim in its motion for summary judgment.

*v. Breeden*, 532 U.S. 268, 273, 121 S. Ct. 1508, 1511, 149 L. Ed. 2d 509 (2001) ("'The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close.'").  Here, Femidaramola was discharged ten days after he sent an email complaining to Cagle and was "chewed out by HR." Defendant conceded at oral argument that its arguments on the retaliation claim other than exhaustion and temporal proximity are questions of fact.  The Court agrees and notes that at the summary judgment stage, "[d]oubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party."  *Allen v. Potter*, 152 F. App'x. 379, 381, 2005 WL 2769530, *1 (5th Cir. 2005).  Accordingly, the Court must credit Plaintiff's version of the events, and in doing so finds that Plaintiff has produced sufficient evidence of a causal connection between his complaints and his termination to withstand Defendant's summary judgment motion.

  D. <u>After Acquired Evidence</u>:

   In its motion,  Defendant argues that Plaintiff's recovery on his claims, if any, is limited by the after-acquired evidence doctrine.  *See McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 362, 115 S. Ct. 879, 886, 130 L. Ed. 2d 852 (1995) (holding that damages may be limited in cases of after-acquired evidence of employee wrongdoing).  In support, Lextron presents the affidavit of Wendell Johnson, its human resources director, who states that Femidaramola did not disclose his previous employment with and termination by a Nissan supplier or the fact that he had been terminated from two jobs for fighting and/or his inability to get along with others.  Johnson submits that, if Lextron had known these facts, it would not have hired Plaintiff.  While Plaintiff does not

address this argument in his memorandum of law, he does submit his entire deposition transcript in response to the motion for summary judgment. The Court has reviewed that transcript and notes that Plaintiff's sworn testimony takes issue with the factual assertions of Defendant's affidavit. Accordingly, the Court finds that questions of fact exist as to this issue that must be resolved by the jury.

Based on the foregoing, it is ordered that Defendant's motion for summary judgment is granted as to Plaintiff's disparate impact and disparate treatment claims. It is further ordered that Plaintiff's Title VII retaliation claim is dismissed.[7] Defendant's motion for summary judgment as to Plaintiff's retaliation claim is denied, however, under section 1981 as is its motion under the after acquired evidence doctrine.

**SO ORDERED AND ADJUDGED** this the 18th day of September, 2006.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE

---

[7]The Fifth Circuit has recognized "disagreement in this circuit on whether a Title VII prerequisite, such as exhaustion, is merely a prerequisite to suit . . . or whether it is a requirement that implicates subject matter jurisdiction." *Pacheco*, 448 F.3d at 788 n.7 (recognizing dispute, but declining to "take sides"). Because some of the more recent Fifth Circuit decisions have held that failure to comply with a Title VII prerequisite deprives the court of jurisdiction, the Court has dismissed Plaintiff's Title VII retaliation claim without prejudice. *See Randel v. U.S. Dept. of Navy*, 157 F.3d 392, 395 (5th Cir. 1998); *Tolbert v. U.S.*, 916 F.2d 245, 247 (5th Cir. 1990).